We will first hear from the United States of America versus Jared El Mujaahid. And Mr. Freefield, I have my pronouncing your name right? Freifeld. Thank you, Freifeld. And I see that you've reserved two minutes. Is that correct? Yes, Your Honor. OK, let me give my colleagues a sec. And then we will begin. May it please the Court. Good morning. While facts as recited in the PSR show that the CI told Mujaahid that he sells firearms to an exporter, the PSR doesn't state whether this conversation occurred during the first, second, or third sale. Accordingly, the facts as alleged are entirely consistent with the conversation occurring during the third sale after the third firearm had already been transferred. Indeed, as we've heard, that's exactly why the PSR never identifies an actual transfer with the requisite knowledge, but instead relies exclusively on Mujaahid's quote-unquote expressed interest in doing future sales. Thus, the PSR fails to provide a basis for application of the export enhancement. Accordingly, this Court should remand for resentencing with instructions not to include the enhancement upon resentencing. That is, with no fact-finding at all. After all, the government below, in no uncertain terms, urged that the PSR was sufficient to sustain it. I'm confused, counsel. I'm looking at the PSR, paragraph 20. Exactly as you say, the error which we've subsequently learned about isn't captured in this factual statement. It just says during at least one of the sales this conversation was had. And it infers from that that essentially that you're selling guns. And during one of those conversations, it's stated that the weapons are going to go to the Dominican Republic. Why isn't that sufficient alone for the application of the enhancement? And, of course, defense, you are not trial counsel, I understand. Yes, I was not. The objection, there was no factual objection made. There was obviously an objection to the enhancement, but on quite different grounds than what you're arguing now. But just starting with that paragraph in the PSR, why isn't that sufficient? Because it's entirely consistent with the gun having already been having to transfer after the third sale. It's consistent with, but it's also consistent with it having been transferred after, sorry, the conversation occurring before the transfer. There's no way to tell. So that's so my argument is it's insufficient for that reason, since you don't know whether it occurred. It's required that it had occurred before. I mean, that's undisputed. I mean, we know factually now, based on the error that's occurred, that it occurred before the third buy. I don't agree with that, Your Honor. I don't agree with that. I don't accept that. Well, we know that the conversation, talking about it, occurred on the second buy. Are you saying you don't know what was the second buy or what was the third buy? I'm saying both. I'm saying that the defendant has not had an opportunity to challenge these allegations under any circumstances. Below, these allegations were not in dispute. What about in the sentencing memorandum? I'm interested in figuring out, is that new law for us? Are we allowed to, you didn't object, or trial counsel below didn't object to the sentencing memorandum. Is that correct? He's not required to object to a sentencing memorandum, that I'm aware of. It's not an issue. The sentencing memorandum is not an issue at the sentencing. So it's not incumbent upon him to file objections to a sentencing memorandum. Well, I mean. The PSR is an issue, and it is incumbent upon him. To be clear, counsel, if there's a factual dispute that is material to sentencing, then the defendant can request a FATICO hearing for determination of the dispute. So he didn't object to the PSR, raised no concern with the statement as to the sequencing of the calls indicated in the sentencing memorandum. But what we know the factual record is because there was no objection, and the district court accepted the factual recitations of the PSR for purposes of sentencing, is what we have in paragraph 20. I can return. All right. There are two arguments. Which should I address? You choose. Okay. And then remember, there's a third in there if we are breaking new law by considering a sentencing memorandum to fill in the gaps. Yes. There's no question that you'd be breaking new law. Not only would you be breaking new law, it would be violating Rule 32, which has the entire focus on the PSR. And as Her Honor said, they can raise a FATICO hearing, but there has to be a factual basis for the conclusion within the four corners of the PSR or some other part of the record that the defendant had an opportunity to challenge. There is no reason, Judge, for a defendant to challenge factual allegations set forth in a sentencing memorandum if they don't affect the application of the guidelines range. And even if they do, by the way, if it's – okay, I stand by that. So without – it's – let me make this point, please. At sentencing, the court always says, as required by Rule 32, to the defendant, did you read the PSR and did you discuss it with your counsel? Right. The reason, I submit, that there's that rule is so that the district court can take comfort that the defendant, who knows more about the facts than his counsel, has had the opportunity to discuss with counsel before the court makes facts findings. The same protections are not present when it comes to discussing the sentencing memorandum. And so while Your Honor says that the sentencing memorandum stands undisputed, I submit that would only be the case if it was called to defense counsel's attention, then he had to object to that. The first time it's come up that this supports the export enhancement is on this appeal. That's the first time. What about in the Pimentel letter? What about what? The Pimentel letter. That's not within the four corners of the PSR. The PSR discusses the Pimentel letter, but in fact, the officer declines to adopt some of the facts that are set out in the Pimentel. I think that's telling, that the officer set out terms of the PSR, and then when he made his own proposed findings of fact, he did not include a number of those. So it appears to me the officer had some skepticism about everything that the government had said in the Pimentel. And I stand by that. And it's the same with the export enhancement. It's the same phenomenon. I want to understand your argument because I don't. Okay. What really the sentencing memorandum has to do, given where we are now. So trial counsel did not make an argument about the factual sufficiency of application of the enhancement. Okay. Right? Yes. I mean, he said it shouldn't apply because it was, you know, the government that introduced it. He then really made it as a 3553 variance argument. I think that's the thrust of what he's doing when you read it in whole. But in any event, we didn't have an objection. No one got into this factual question that factual record for purposes of sentencing, as adopted by the trial court, was the PSR. And so I think the ball game here is whether that is factually sufficient to, on plain error review, to support the finding of the application of the enhancement. How am I thinking of that argument wrong? You are thinking of that argument correctly, assuming that you adopt the plain error standard. My argument, though, is twofold. Number one, in determining plain error, you cannot consider the rough transcript that's set out in the sentencing memorandum. That's not within the four corners of the PSR. It was never presented to the defendant. So that's not something that the court can consider on plain error review. Now, in response to your question, I argue, and I'm not going to read it, everyone can read it for themselves, that between Paragraph 20, Paragraph 30, and Page 23, which is the addendum, it doesn't say that the transfer happened prior to the third. Pardon me. It doesn't say that the conversation happened prior to the third transfer. So within the four corners, it's not there. Again, I don't want to parse the word. But I think that if you read it with those eyes for a moment, you will see that it can go either way. Right. That's my question. Could it go, is the inference available as stated in the PSR? As you just said, it could go either way. So the inference is available that the conversation happened before the final transfer. Okay. If you didn't have that sentencing memorandum, I submit, you wouldn't even be thinking that. It's only the sentencing memorandum, I submit, that allows you to think that, that the possibility exists, that that's During. What? During. During at least one of the sales. That's the third. He told him. I mean, the sales. Well, you're now interposing facts which actually turn out to be wrong into the sentencing memorandum. I'm just reading the sentencing. Oh, I thought you were reading the PSR. I'm sorry. I'm reading the PSR, not the sentencing memorandum. So during. I'm not taking anything from the sentencing memorandum. I'm reading the PSR. One of the informants told him that he sold firearms to a third party who exported those firearms to the Dominican Republic. How is that? That could be after the transfer already happened. I mean, we've agreed to that. And we've also agreed that it could be before the transfer happened. Yes, Your Honor. Okay, thank you. We'll hear from you in rebuttal. Thank you. Mr. Verma.  We have, Your Honor. And as we said in our supplemental brief, we regret that our error. We regret that it took up more of the court's resources than otherwise should have been taken up by this appeal. Good morning, Your Honors. May it please the court. My name is Christopher Brumwell. I'm an assistant United States attorney in the Southern District of New York. I represent the government on appeal, and I represent the government and the proceedings in the district court below. I'd like to start today by taking a look at the PSR. There's been some discussion about what was in the PSR, and I'd like to direct Your Honors to Paragraph 30, which also discussed the export enhancement. And it says, the facts underlying the enhancement are right in Paragraph 30 of the PSR. Because the defendant believed that the purchaser of at least one of the firearms he sold intended to sell it to another individual who intended to export it to the Dominican Republic, the enhancement is appropriate. So there was the factual basis for the export enhancement is there in the PSR, and it's not under dispute in the district court. And that fact was put on the record at sentencing. Clearly, we said there's been discussion about sending these guns to the Dominican Republic. That's not in dispute. That's in the record at sentencing at page 74. So there were no disputes here. Under the Wagner-Dano case, which we cite in our supplemental brief, it is absolutely the defendant's obligation to object to these facts. If he has an objection, if there's something he wants to dispute, there has to be a dispute. There was no dispute here. And to Your Honor's question about whether there's new law about relying on the sentencing memo, there isn't. Where there's no dispute about the facts, the court can rely on what's in the government sentencing memo to apply the enhancements. What do you think our factual record should be for purposes of evaluating error, whether plain or clear or just error? It should be the factual state of the facts as reported in the PSR. And then to the extent there's, again. So it doesn't really matter what's in the sentencing memorandum, except to the extent that that presumably should have alerted defense counsel, potentially, to raise an objection based on the order in which the two conversations were described. If there were such an objection. This would have been worked out if there had been an objection. But there was no objection in the court below. And in fact, the basis for challenging the enhancement was completely different. In the court below, the objection was this was just something the informant said. It wasn't something so much that the defendant wanted to adopt himself. And that was the dispute in the district court. There was no dispute about the facts about what the enhancement, export enhancement applied. Because the defendant had reason to believe the gun would go abroad. That's just in the transcript. There was no dispute. There was a different argument. Is your claim, as I understand it, your claim is that the error was in the government sentencing memorandum, not in the PSR. That's correct, Your Honor. And that the defendant could have objected. In fact, the error the government made, as you argue in your briefs, was to the defendant's benefit. Correct? Yes, absolutely. You mixed the third sale with the second sale. So did the defendant have any incentive to correct the error? None, Your Honor. Even if this had been disputed in the district court, which it wasn't, there would have been no reason, no need for him to object. But, of course, on either record, and this is what we argued in the briefs on appeal, the export enhancement applies. And it's really for the same reason. In the second sale, there's discussion about sending these guns abroad. That discussion in the second sale gives the defendant clear reason to believe in the third sale, hey, I'm dealing with the same people here. They told me they export guns. There was some indication in the record, and I just want to get confirmation. The PSR side or the sentencing memorandum, did the defendant have access to the recorded conversations, correct? Absolutely. For all sales. There was only two sales recorded, the second and third. The first one wasn't recorded. But those recordings were absolutely produced in discovery. And as we said in our sentencing memo, if there had been a dispute about this, we could have shown those to the court and discussed it. But, again, there was no dispute about this. So, again, this was always clear to the defendant. It was in the PIM and TEL letter. It was in the PSR. And it was put on the record at sentencing as an undisputed fact. There was discussion about sending these guns to the Dominican Republic. So based on the undisputed facts, there was absolutely a fulsome record for applying this enhancement. Your Honor, if you have any further questions, I'm happy to address the plenary standard review or any other questions the panel may have. But if not, I'm happy to sit down. We're good? I think we're okay. Thank you. Thank you, Your Honors. This argument that it's in the PSR which satisfies the export enhancement was not set forth in their brief. It was not in their principal brief. It's only in their supplemental brief that they said that. Their whole argument in the – if it was true that the PSR – that they believed that the PSR was alone sufficient, why did they bring up the sentencing memorandum? They were only bringing that up to show, look, the discussions were had in either the second or third – pardon me, in the second and third. That's why they were bringing that up in their main brief was because I argued in my reply and I stand by it. They conceded that the PSR was insufficient. This would be a complete – if the PSR was sufficient, all of these arguments would be frivolous. They would have brought it up in their principal brief and not saved it for their supplemental brief after they thought of it. Where's the concession that the PSR was insufficient? Did I not understand you? You just said that. Yes. It's the fact that the bulk of their argument was in reliance on the sentencing memorandum to show that the discussions had been had during the second meeting. So as to show that the third one – so they had knowledge in the third one. Well, no. They were still – they still had it wrong. Why would they have brought that up? Right. But they still had it wrong. They still had the ordering wrong if they had points. Okay. I'd like to make that point, as Your Honor said. If one was different – if one was the second and one was the third or one was the third and one was the second, it makes a difference – it doesn't make a difference. The discussion was had during the second one, and then the argument is that he had knowledge of the third one. So what is the difference? Which one went first? Counsel. Yes. Your Honor. Pardon me. The PSR came first, correct, before the government sentencing memorandum? Yes, it did. So the PSR was not based on the sentencing memorandum. It was based on the probation officer's assessment of the facts that it had before it. Yes. So you're not suggesting that the PSR misinformed the court. That was only the government's memorandum. So why can we assume that the district court judge had the wrong facts if the district court judge was basing it on the PSR? My argument is that the PSR was insufficient for the purpose. The court below did not rely on the sentencing memorandum. That's undisputed. The court below relied only on the PSR, and I can concede for that purpose that it has to be plain error review. In fact, 95 percent of the government's argument just now was that this is a plain error case, and I submit. And so while I'm prepared to admit that it has to be plain error due to the limited nature of the objection below, I continue to maintain that the sentencing memorandum cannot be considered. Can I ask you a question about that? Please. I'm just looking at the text of 32I1B. At sentencing, the court must give to the defendant and an attorney for the government a written summary or summarizing camera, any information excluded from the pre-sentence report on which the court will rely in sentencing, and give them a reasonable opportunity to comment on that information. So there was a – I mean, I'm not even sure what the basis or authority is for the notion, if it mattered here, that the district court couldn't rely on the sentencing submission since it was an unobjected-to written submission that was beyond the PSR? I agree with you, Your Honor. Okay. This court can't rely on the sentencing memorandum in assessing plain error. That's my argument. Fair. That's my argument. Can you talk to me about the trafficking and export enhancements? Is your position that they can never be applied together or they can't be applied together in this instance? Well, it all depends on what the district court determined why it was applicable. Again, it's within the four corners of the PSR on this issue. If it's not within the four corners of the PSR, then it was misapplied. The only basis that the district court – that the PSR provided for the trafficking enhancement, it provided two bases. One was the export enhancement. So our argument is, well, if you're going to apply the export enhancement on the export enhancement and you're going to use the export enhancement as the basis for the trafficking enhancement, that's double counting. So you can't use the – so within the four corners of the PSR, one was the export enhancement as the basis for the trafficking enhancement. I've now addressed that. The second was it said there was an allegation that during the – one of the conversations, and this is not in any of the transcripts, my client discussed exchanging crack for firearms, and therefore he should have known what was really – No, I mean, I'm not even interested in that. I'm more interested in the idea that one was a sawed-off shotgun, one was stolen, and why aren't those – I'd like to put that – thank you for asking me. I'm going to concede plain error review on the trafficking enhancement. Now the issue becomes whether or not the government – I can show substantial prejudice given that – I've given you the two reasons why the PSR was insufficient to prove the trafficking enhancement. What the government would say and what they did say in their brief was, well, it does say that there was a sawed-off shotgun within the – as one of the sales, and other circuits have held that that is sufficient to show illegality. But this circuit hasn't held that, and my argument – so in other words, the court can say, well, Mujahid can't show plain error, can't show substantial prejudice, because within the four quarters there's a firearm. Until this court decides that a firearm is sufficient to satisfy the traffic enhancement, he should have been given the opportunity to argue that in the first instance for the district court. Was that – You're saying you need a case precisely factually on point? This court has never – no. There are arguments to be made why a sawed-off shotgun is not noticed that the transferee is going to dispose of it illegally. That's the issue. How is the transferee going to dispose of the firearm that he receives? Is it going to be illegal? When you sell a guy a gun, it's just the sale itself. If he's going to keep it in his house to protect himself, he's not disposing of it illegally, and the traffic enhancement doesn't apply. And courts have held that if the sale is a sawed-off shotgun, then it amounts to – then the transferee knows that the transferee's disposition is going to be illegal. There are arguments to be made, but that's not true. We have cases that are not sawed-off shotguns, but like Mena was a defendant who twice delivered guns in a plastic bag in exchange for cash on the street, and that was sufficient. So the way one analogizes to other cases, if that's sufficient, why wouldn't the analysis of the sawed-off shotgun be sufficient? Was that a summary order? It was not, actually. I don't – Well, Mena – I think it may have been. I'm not sure. I'm not sure either. I don't – you know – You're right. It may have been a summary order. I hope the Court had an opportunity to read my 28J letter just last week. The Court decided in Jennings in a summary order just this past Friday this very issue. The Court went to great lengths to show all – But it decided against the defendant. What? It decided against the defendant. I can't deny that. But the Court went to great lengths to show all of the different ways by which he was on notice that the transferee was going to dispose of it illegally. I think they're a far cry. I mean, there were 16 guns there. There was seven from different types. I think that – I don't think that Mena squares with the law more broadly. I mean, there's a cumulative nature of it. One was stolen. One was sawed off. That's – the fact that he – the fact that I am selling a stolen gun is not notice to me that the transferee is going to dispose of it illegally. It's irrelevant. It's irrelevant. The issue on the enhancement is whether I know how the transferee is going to dispose of it. Just because – and my argument is the same thing with a sawed-off shotgun. A person can want a sawed-off shotgun in their home to protect themselves. It's conceivable. In which case, the transferee would not be disposing of the shotgun illegally. Okay. All good? Thank you so much.  Thank you. Thank you.